## HARRIS V. RUTLEDGE.

1. **Weights and measures:** PERCH. Under our statute, twenty-five cubic feet constitute a perch of mason or stone work.

2. —— CONTRACTS: CUSTOM. Where contracts do not show upon their face that they were made with reference to some custom, the provision of the statute in regard to weights and measures will govern in determining the rights of the parties thereunder.

3. **Equity:** REMEDY. Remedy in equity in certain cases discussed.

*Appeal from Madison District Court.*

### MONDAY, JANUARY 8.

WEIGHTS AND MEASURES: PERCH OF MASONRY DE-FINED: CUSTOM CANNOT CONTROL AN EXPRESS STATUTE: REFORMATION OF CONTRACT: PRACTICE IN SUPREME COURT. — This is an action by the plaintiff, a stone mason, for work and materials. The parties entered into a *written* contract, March 7, 1864, whereby the plaintiff agreed to furnish the materials and do the stone work of a house for the defendant. The dimensions of the house were subsequently enlarged at the defendant's request, and it was also built higher than originally contemplated.

The claim by the plaintiff is for a balance alleged to be due him for the work stipulated for in the original contract, and for extra work and materials. Certain payments are admitted. Defendant claims damages for defective work, and also a set-off.

The cause was tried to the court, and a judgment, with a mechanic's lien, entered in favor of the plaintiff. Defendant appeals.

*V. Wainwright* for the appellant.

*Leonard & Mott* for the appellee.

DILLON, J. — By the written contract the plaintiff agreed "to build one rock house, sixteen by eighteen feet in the clear, furnishing everything, except wood work, at $3.50 *per perch.*" When made, this contract was not stamped; but, under section 163 of the act of Congress, of June 30th, 1864 (Stat. at Large, 1863, 1864, p. 218), it was post stamped on the trial. It thereby became as valid and binding between the parties as if it had been duly stamped at the time of execution. The contract nowhere specifies the amount or quantity of which "a perch" shall consist. On the trial, the plaintiff claimed that it was the understanding of the parties, though it was not expressed in the contract, that a perch should contain only sixteen and one-half cubic feet. He also claimed that such was the general custom among masons, or at least was the local custom of that neighborhood. These claims are controverted by the defendant.

*1. WEIGHTS AND MEASURES: perch.*

The plaintiff was examined as a witness in his own behalf, and stated, *inter alia:* "My understanding was sixteen and one-half feet to the perch, and I never supposed the defendant understood it differently."

"Plaintiff's attorney," so continues the bill of exceptions, "then asked the witness, if there was a custom among masons, as to the number of cubic feet constituting a perch of stone work. The defendant objected, for the reason that the statute fixes the number of cubic feet in a perch. The objection of the defendant was sustained by the court, for the reason, that custom could not be proven to conflict with an express statute; but the court further held, that the plaintiff might show an express or an implied contract to count sixteen and one-half feet to the perch, or he might show, that he, plaintiff, understood that he was working at sixteen and one-half feet per perch, and that defendant knew that fact, or had good reason to know it." The plaintiff, against the defendant's objection, was then

permitted to testify as follows: "I built a stone smoke house for the defendant, the year previous to the present work, and in estimating the number of perches, I reckoned sixteen and one-half feet to the perch. Defendant also took the dimensions of the smoke house, and said his estimate agreed with mine, and he paid me for sixteen and one-half feet per perch."

The statute (Title XIII, "Regulations pertaining to Trade, ch. 71," Weights and Measures) provides (§ 1777) that "the 'perch' of mason work or stone is hereby declared to consist of twenty-five feet cubic measure." It also contains the following general provision (§ 1778) applicable to the subject in hand: "Contracts in which no other scale or standard is expressed shall be taken to mean the above. (See corresponding provision, Blue Book, 1843, p. 655, § 7.)

The object of a statute is to be considered in giving it a construction. A few considerations will serve to make this object manifest. Under the national Constitution (art. 1, § 8) congress has power "to fix the standard of weights and measures." This power, it has never exercised. And until it is exercised, the respective States may, for themselves, regulate weights and measures. Rawle on Const., ch. 9; Story on Const, § 1122; *Weaver* v. *Fegely*, 29 Penn., 27 (1857), and authorities there cited.

2.— con-
tracts:
custom.

Experience in all ages of the world has shown that this is a proper and even necessary subject of legislative regulation; that in no other way can certainty and uniformity be secured. "Divers weights and measures" were deprecated by the wise king. Proverbs xx, 10. And similar grievances led to the declaration, in *Magna Charta*, that there should be but "one weight and measure throughout the kingdom." To secure uniformity, numerous statutes

have from time to time been passed in England, and by the various States in this country.

It was especially proper that the legislature should fix or define a "perch" of masonry, for aside from statute, the amount is not only uncertain, but this uncertainty is of a most material character. Webster (Dict., Unabr., 1865, voce, perch) thus defines it: "In solid measure, a mass sixteen and one-half feet long, or a foot each in height and in breadth, or sixteen and one-half cubic feet." Worcester gives no definition in solid measure. Many of the arithmetics fail to define a "perch," but one of the latest (Robinson, p. 169, 1860) says: "A perch of stone or of masonry is sixteen and one-half feet long, one and one-half feet wide, and one foot high," or twenty-four and three-quarters cubic feet." The new American Encyclopedia (voce, "perch"), after giving other definitions, adds: "In masonry, a perch is equal to twenty-five cubic feet."

To obviate this uncertainty, and to secure uniformity throughout the State, were the objects of the statute. If a man in Davenport contracts with an inhabitant of Leclaire for a perch of stone, or with his neighbor mechanic to lay up a perch, the statute binds both parties, and local customs, fixing a different measure cannot be set up, unless mentioned in the contract. To allow it to be done would nullify the letter and subvert the policy of the statute; would introduce that uncertainty and resulting litigation, which it was the manifest and wise design of the statute to remove and prevent.

Thus we regard the case upon principle. Counsel cited no authorities directly applicable, but our own examination has shown that our opinion is amply and uniformly supported by adjudications elsewhere. Thus the same view of precisely a similar question has been taken by the Supreme Court of Pennsylvania, in a case essentially the same as the one at bar.

The statute of that State of April 15, 1834, provided, that "twenty hundred shall make one ton." An agreement in writing was made, whereby the defendant contracted "to weigh off and deliver forty tons of pig metal at twenty dollars per ton;" breach, that defendant had delivered but thirty-four and one-half tons. On the trial, defendant offered to prove, "that the universal custom with dealers in pig metal is to buy and sell by the gross ton of 2268 pounds, and that *defendant has always sold according to that weight and usage.*" The District Court received the evidence, and it was proved that for twenty-four years the custom, at the place where the metal was by the contract to be delivered, was universal, to give 2268 pounds sand mound metal to the ton, and the plaintiff accordingly recovered. But on appeal, this judgment was reversed by the Supreme Court. LEWIS, Ch. J., delivering the opinion, says : " If twenty hundred pounds make a ton, the defendant had delivered, before suit brought, the quantity required by his covenant. But the plaintiff claimed 2268 pounds to the ton, and the court, on proof of a custom 'among those dealing in metal throughout the iron region up the Allegany river, where the contract in suit was made, and where the metal was to be delivered,' permitted the jury to find that the contract was for the number of pounds claimed by the plaintiff." The Supreme Court considered that it was important that the standard should be uniform throughout the State, and binding upon all men within it. Local customs would contravene this policy, and lead to the uncertainty which the statute intended to prevent. The statute entered into the contract and formed an essential part of it. The contract must be intended to have been made with reference to the law. Being in writing, the court should construe it. The statute abolishes the custom. And it was accordingly held to be error, to admit the evidence of

custom to control the statute, and permit the jury on such evidence to find the contract to be different from its legal import. *Evans* v. *Myers*, 25 Penn. (1 Casey), 114, 1855; followed in *Weaver* v. *Fegely* (holding that a ton of coal consisted of 2,000, and not 2,240 pounds), 29 Id. (5 Id.), 27, 1857. The same point was expressly decided the same way, in *Many* v. *The Beekman Iron Company*, 9 Paige Ch., 188, 195, 1841. Chancellor WALWORTH there says: " But where a positive statute has declared the meaning or legal signification of a word in reference to its use in contracts generally, I am not aware of any case in which a court of law has gone so far as to receive parol evidence to explain a written contract expressed in the language of the statute, by show-ing that the statutory term in that particular contract, meant something else than that which the legislature has declared should be its meaning." See also *Noble* v. *Durell*, 3 Term, 271; *Hockin* v. *Cooke*, 4 Id., 314; *King* v. *Major*, Id., 750; *King* v. *Arnold*, 5 Id., 353; *Paull* v. *Lewis*, 4 Watts, 402; Addison on Cont., 854; *Truman* v. *Loder*, 11 A. & E., 599; *Taylor* v. *Briggs*, 2 Carr. & P., 525. The present case is essentially different from *Pilmer* v. *The Bank*, 16 Iowa, 321, as there was in that case no express *statutory definition* of the word " currency." In the case before us, the contract was made after the statute. The statute applied to it. And the statute in so many words, declares that " a perch *shall* be taken to mean twenty-five feet cubic measure, *where no other measure is expressed.*" Here no other was expressed. The District Court " held that the plaintiff might show an express or implied con-tract to count sixteen and one-half feet to the perch, or that the plaintiff so understood it," &c. This looks plausible. But let us examine it. There was no pretense of any other contract except the written one before alluded to, which did not define the quantity a perch contained. An *express* con-

temporaneous contract, would have to be in writing, or else the agreement would be partly written and partly verbal. There was no express contract on this point shown, written or verbal, contemporaneous or subsequent. Under these circumstances, and under the issues, evidence showing an *implied contract or understanding*, different from the plain and legal meaning of the written and express agreement, was obviously incompetent. Suppose, however, that the parties, in fact, both meant a perch of sixteen and one-half feet, and that defendant is now seeking to hold the plaintiff to a different agreement, to obtain and retain an unjust advantage. Upon the evidence contained in the record, considering the low price of the work, the testimony of the plaintiff as to *his* understanding, that of masons as to the custom, the fact that a perch is in many places considered, and in a standard dictionary defined to be, sixteen and one-half feet, and particularly the silence of the defendant on the point of his understanding, the court having allowed this field of inquiry to be gone into, there is room to believe, that the parties did, in fact, contemplate a perch of sixteen and one-half feet, and that the contract for some reason failed, in this respect, to express the intention of the parties. But if this is so, the plaintiff must correct the contract, to conform to the actual intention of the parties, and have the words "sixteen and one-half cubic feet" inserted in the contract after the words "per perch." To reform the contract, he must of course bring his case, by the proof, within the rules and practice of courts of equity on this subject. In point, see *Many* v. *The Beekman Iron Company*, 9 Paige Ch., 188. As the case stood, the court erred in receiving the testimony, and allowing a recovery on the basis of sixteen and one-half feet to a perch. We only observe that if the *extra work* was to be paid for at what it was reasonably worth, instead of by the perch, the dispute as to the

quantity in a perch would, as respects the extra work, be immaterial.

For the reasons above given, the judgment of the District Court is reversed, and the cause remanded. The District Court will give the plaintiff, if he asks it, leave, on such terms as to costs as it may deem proper, to amend his petition and claim a reformation of the contract, which will be tried by the first method, unless the parties otherwise agree. When this issue is decided (whether the decision shall be in favor of a reformation of the contract or not), the court will then proceed to try the cause as one by ordinary proceedings, unless the parties stipulate for some other mode of trial.

Reversed.