## THE OHIO STANDARD OF DRY MEASURE UPHELD.

Common Pleas Court of Hamilton County.

AL EPPINGER ET AL V. THE CITY OF CINCINNATI ET AL.

Decided, January 23, 1914.

*Constitutional Law—Standards of Weights and Measures—Right of the State to Establish—Validity of Section 6415.*

The power which is vested in Congress by the Federal Constitution to regulate weights and measures, does not extinguish the authority of the states over the same subject until Congress sees fit to exercise the power so conferred. In the meantime each state is at liberty to establish its own standards, and Section 6415, General Code, as amended (103 O. L., 139), providing subdivisions of the half bushel, is a valid enactment.

*Alfred Bettman,* City Solicitor, for the demurrer.
*Mallon & Vordenberg,* contra.

GEOGHEGAN, J.

Heard on demurrer to petition.

This action is brought primarily to test the constitutionality of an act of the General Assembly of the State of Ohio, known as Section 6415, General Code of Ohio, as amended March 12, 1913, and found in 103 Ohio Laws, at page 139.

The act reads as follows:

"SECTION 1. That Section 6415 of the General Code be amended to read as follows:

"Sec. 6415. The peck, half-peck, quarter-peck, quart and pint measures for measuring commodities other than liquids, shall be of the interior dimensions and capacities as follows, to-wit: the peck measure shall be eleven inches in interior diameter, five and five-eights inches in interior depth, and shall contain five hundred and thirty-seven and six-tenths cubic inches; the half-peck measure shall be eight and one-half inches in interior diameter, four and three-quarter inches in interior depth, and shall contain two hundred sixty-eight and eight-tenths cubic inches; the quarter-peck measure shall be six and five-eights

inches in interior diameter, three and seven-eights inches in interior depth, and shall contain one hundred and thirty-four and four-tenths cubic inches; the quart measure shall be five and five-sixteenths inches in interior diameter, three inches in interior depth, and shall contain sixty-seven and two-tenths cubic inches; the pint measure shall be four and one-half inches in interior diameter, two and nine-twenty-fifths inches in interior depth, and shall contain thirty-three and six-tenths cubic inches.

"Section 2. That said original Section 6415 of the General Code be and the same is hereby repealed."

The plaintiffs contend that the said act is illegal and void and beyond the power of the Legislature to enact, because the exclusive power of fixing the standard of measures is vested in the Congress of the United States by virtue of Clause 5 of Article I of Section 8 of the Federal Constitution, which gives Congress the power "to coin money, to regulate the value thereof and of foreign coins and fix the standard of weights and measures."

It is conceded by counsel for the city of Cincinnati that if Congress has acted and has fixed the standard of dry measure, that this attempt on the part of the Legislature to fix the standard of the smaller dry measures, as set forth in the act, is invalid, and beyond the powers of the state government. But, he contends that Congress has not fixed these standards and that therefore the inherent right of the state to fix the standards remains with the state and that the act in question is not beyond the powers of the state.

That the grant in the Federal Constitution to Congress to regulate weights and measures does not extinguish the rights in the states over the same subject until Congress shall have exercised the power conferred, is clearly pointed out by the Supreme Court of Pennsylvania in *Weaver* v. *Fegely & Brother*, 29 Pa. St., 27. At page 30, the court in discussing this proposition uses this language:

"The United States courts have jurisdiction over controversies between citizens of different states, but no one has ever doubted

the jurisdiction of the state courts over the same parties. To hold that the mere grant of power to the federal government over any subject extinguishes state authority over the same subject, would invalidate thousands of judgments rendered by state courts, in controversies between citizens of different states. In every state in the Union weights and measures have been constantly governed either by a standard established by a state statute, or by the common law of the state. The power of each state to establish its own common law on this subject has never been denied. If the states have this power, they certainly have the power to enact statutes. The power being acknowledged, it is not for the federal government to interfere with the *manner* of exercising it. To deny the existence of this authority now, would overturn the practice which has been uniformly acted on by all the states during the whole period of their political existence. It would throw all past transactions into confusion, and leave the business community no guide whatever for the future; for there is no certainty that Congress will ever deem it expedient to fix a standard. Chief Justice Tilghman, in *Farmers' and Mechanics' Bank* v. *Smith*, 3 S. & R., 69, stated a fact which no one has ever denied, when he declared that 'the states have regulated weights and measures at their pleasure, without objection.'. Their right to do so, until Congress shall act on the subject, admits of no doubt.''

This case was decided in 1857.

The same proposition was laid down in *Higgins* v. *California P. & A. Co.*, 109 Cal., 304, at page 310 (October, 1895); in *Harris* v. *Rutlege,* 19 Iowa, 388, at page 390 (December term, 1865); *Caldwell et al* v. *Lawson,* 4 Metcalf, 121, at 123 (Court of Appeals of Kentucky, Jan. 17, 1863).

Freund, in his excellent work on the Police Power, Section 273, says:

''The earliest legislation for the prevention of fraud relates to weights and measures. It goes back to Anglo-Saxon times, and forms part of Magna Charta. The Constitution of the United States provides for uniformity of weights and measures by giving Congress power to fix their standard; but Congress has enacted no compulsory legislation in execution of this power. It merely has passed an act authorizing the use of the metric system; and the federal government supplies the several states with certain standard weights and measures as a matter of favor

and accommodation under a resolution of Congress of June 14, 1836. Until superseded by act of Congress the regulation of weights and measures therefore devolves upon the states, and is provided for by state legislation."

In 40 Cyc., page 880, this section has been discussed as follows:

"Under the Constitution of the United States, Congress is given power to establish uniform weights and measures. This power it has never exercised. And until it is exercised the respective states may, for themselves, regulate weights and measures. By a joint resolution, adopted June 14, 1836, provision was made for sending to each state a full set of standards. These standards were early adopted by some states, and have continued in force ever since. And in every state in the Union weights and measures have been constantly governed either by a standard established by a state statute, or by the common law of the state."

It must be apparent, therefore, that the great weight of authority is for the proposition that Congress has not acted upon this subject in such a manner as to abolish the state's right to control the subject by legislation. Congress by the act of May 19, 1828, adopted a brass troy pound weight, procured in London by the Minister of the United States, for the use of the mint at Philadelphia. On May 28, 1830, the Secretary of Treasury reported the result of his inquiries into discrepencies in the weights and measures as actually used in the various custom houses, and also that he had adopted a uniform practice in conformity with the details given, which indicated conformity to the old English standard, and in June, 1836, Congress enacted a joint resolution directing the Secretary of the Treasury to cause a complete set of all the weights and measures adopted as standards, then made or in process of manufacture for the use of the several custom houses and other purposes, to be delivered to the governor of each state in the Union, or such person as he might appoint, for the use of the states respectively, to the end that a uniform standard of weights and measures might be established throughout the Union.

On March 3, 1881, the secretary was required to deliver to the governor of each state, for the use of agricultural colleges, and to the Smithsonian Institute, a complete set of all the weights and measures adopted as standards.

On July 11, 1890, an appropriation was made for the further construction and the adjustment of standard weights and measures to be supplied to the custom houses and other offices of the United States, and for several states.

Most of these acts as well as the act of July 28, 1866, providing for the use of the metric system in determining weights and measures, and the act of March 3, 1901, to establish a uniform bureau of standards, are found in 7 Federal Statutes Annotated, at page 1107, *et seq.*   See also *Thompson* v. *District of Columbia,* 21 Appeal Cases, D. C., 395.

I have examined at some length the legislation upon this subject, and have come to the conclusion that while the federal government throught its Congress has acted at various times with reference to weights and measures, there has been no attempt on the part of the federal government to establish a compulsory standard of weights and measurements, and that until the federal government does act in that respect, the power remains in the state to establish its own standards of weights and measures.   Therefore, it would seem that Section 6415, General Code, as amended, is a valid and constitutional enactment.

Some question arose during the oral argument as to Section 6416, General Code, which reads:

"Articles usually sold by heaped measure shall be heaped in a conical form as high as such articles permit."

No mention is made, however, of this section in the briefs that have been submitted by counsel, and the city solicitor frankly admits that this section is of doubtful constitutionality.   I agree with him, but as the petition is framed for the purpose of enjoining the city of Cincinnati and its sealer of weights and measures from interfering with the use by plaintiffs of certain measures that are not in conformity to the standards as fixed by Section 6415, General Code, I do not think it necessary to

pass upon the validity of Section 6416. That may be taken up when a case arises wherein a violation of that provision is charged.

Having thus determined that Section 6415 is a valid and constitutional enactment, it would seem that the state has the right to enact legislation seeking to compel the use of the standards as fixed, and to prevent even by confiscation the use of measures not in conformity with the standards. Therefore, the city sealer was right in seizing and taking away the measures set forth in the petition.

The demurrer, therefore, will be sustained.